473 A.2d 450

Dorothy L. STEVENSON

v.

STATE of Maryland.

No. 46, Sept. Term, 1983.

Court of Appeals of Maryland.

April 9, 1984.

Gary W. Christopher, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Carmina Szunyog, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

COUCH, Judge.

We are asked to hold that the Circuit Court for Kent County (Clark, J.) erred in denying appellant's motion for a new trial in this criminal case. The motion was based on the newly discovered evidence that one of the state's expert witnesses had perjured himself with respect to his academic credentials. We affirm.

The facts giving rise to the issue before us may be succinctly stated. The appellant was charged with the first degree murder of her husband and related offenses including setting fire while perpetrating a crime.[1] It appears that

---

1. Maryland Code (1957, 1982 Repl. Vol.), Article 27, § 11.

her husband's death was the result of severe burns he received from a gasoline fire in his bedroom. The deceased victim lived for nineteen days after the incident and, during this time, he made several statements to the effect that appellant poured gasoline on him and ignited it with a match. Appellant, however, denied the presence of a match, contending that the ignition was spontaneous. At trial both sides called numerous witnesses. Approximately forty witnesses testified for the state, including nine experts in the case in chief, and four experts on rebuttal. The defense called seventeen witnesses, including five experts. At issue was the origin of the fire.

Dennis Michaelson was one of the rebuttal witnesses called by the state to counter defense expert testimony as to the origin of the fire. In the qualifying part of his testimony Michaelson testified that he had graduated cum laude from the Illinois School of Technology, a fact which subsequently proved to be untrue.

Prior to this perjured testimony coming to light, appellant's convictions were affirmed on appeal. *Stevenson v. State,* 289 Md. 167, 423 A.2d 558 (1980). Nearly two years after the trial the State's Attorney, who prosecuted the case, was advised by the Illinois Department of Law Enforcement, Division of Criminal Investigation, that Michaelson had not graduated from the school. The record clearly demonstrates the State's Attorney had no prior knowledge of the perjured testimony. After being apprised of this fact the State's Attorney informed defense counsel. Thereafter, appellant filed the motion for a new trial[2] alleging that

---

2. The case was decided by this Court on December 17, 1980. On January 21, 1981, the mandate was filed in the Circuit Court for Kent County. On January 8, 1982, appellant filed the motion for new trial. This is within the precept of Md.Rule 770 b. which provides:

"Upon motion filed ... within one year after receipt by the court of a mandate issued by the Court of Appeals ... a court may grant a new trial or other appropriate relief on the ground of newly discovered evidence, which, by due diligence, could not have been discovered in time to move for a new trial pursuant to section a of this Rule."

appellant "was convicted in large part on the sworn testimony of a State's 'expert' witness in rebuttal, one Dennis Michael Michaelson."

At the hearing on this motion appellant's counsel argued that a new trial was required because if the jury had been aware of Michaelson's perjury it could have reached a different verdict, a verdict more favorable to appellant. The trial judge, in denying the motion, did so on the basis that he was convinced "beyond a reasonable doubt that the State presented a case without the testimony of Mr. Michaelson that overwhelmingly pointed to the guilt of the accused." The Court of Special Appeals affirmed in an unreported opinion. (No. 726, September Term, 1982, filed March 7, 1983). We issued certiorari to determine questions of public importance.

(1)

*Standard To Be Used In Granting A New Trial Based On Newly Discovered Evidence*

Maryland Rule 770 b provides, in part, that a court may, in a criminal case, grant a new trial or other appropriate relief on the ground of newly discovered evidence. No standard is set forth in the rule to guide a trial judge, except to denote the exercise of discretion through the use of the word "may."

The appellant argues that error was committed when the trial judge, citing *Ginnelly v. Continental Paper Co.,* 57 N.J.Super. 480, 155 A.2d 154 (1959), held the test (standard) to be applied is whether the newly discovered evidence would *probably* alter the judgment. We are urged to adopt the less stringent standard of *might* alter the judgment, as a murder conviction "may not rest on probabilities."

█ Under the circumstances present in this case we need not decide which standard should apply because the trial judge expressly found, as noted above, that the state's evidence without Michaelson's testimony overwhelmingly pointed to appellant's guilt. Thus, in essence, the trial judge implicitly concluded that the newly discovered evidence was

not material to the outcome of the case. Whether or not the evidence is material to the result is thus a threshold question. It should be decided in the affirmative before the court inquires into the possible impact the newly discovered evidence would have on the outcome of the trial.

*Larrison v. United States,* 24 F.2d 82, 87 (7th Cir.1928), is the case credited with establishing the "might" rule that appellant urges this Court to adopt. The court held that a new trial must be awarded if it is established: a) that a material witness has testified falsely, and b) that without his testimony the jury might have reached a different conclusion. However, the court there finds that "the evidence amply supports the verdict . . .", *id.* at 87, and that the "testimony was cumulative." *Id.* at 88. Additionally, as the trial judge found in the case *sub judice,* in *Larrison* there also "was sufficient evidence to convict . . . without [this] testimony." *Id.* at 88. Therefore, because the defendant did not overcome the initial materiality inquiry, the court never considered whether the jury might have reached a different verdict. Similarly, the cases adopting the "might" rule also make materiality a key factor. *See United States v. Strauss,* 443 F.2d 986, 990 (1st Cir.) (issue was the possible impact of newly discovered evidence on the credibility of a *key* prosecution witness), *cert. denied,* 404 U.S. 851, 92 S.Ct. 87, 30 L.Ed.2d 90 (1971); *United States v. Meyers,* 484 F.2d 113, 116 (3d Cir.1973) (an important factor in the government's case depended upon perjured testimony); *United States v. Wallace,* 528 F.2d 863, 866 (4th Cir.1976) ("might" rule applied for perjured testimony of material witness); *Newman v. United States,* 238 F.2d 861, 863 (5th Cir.1956) (trial testimony of principal witness rather than affidavit of recantation was true); *Gordon v. United States,* 178 F.2d 896, 900 (6th Cir.1949) (trial testimony of principal government witness was true), *cert. denied,* 339 U.S. 935, 70 S.Ct. 664, 94 L.Ed. 1353 (1950); *United States v. Briola,* 465 F.2d 1018, 1022 (10th Cir.1972) (trial court noted and applied rule and found elements not satisfied), *cert. denied,* 409 U.S. 1108, 93 S.Ct. 908, 34 L.Ed.2d 688 (1973); *United States v. Persico,*

339 F.Supp. 1077, 1088 (E.D.N.Y.) (court not satisfied that trial testimony of the material witness was false), *aff'd,* 467 F.2d 485 (2d Cir.1972), *cert. denied,* 410 U.S. 946, 93 S.Ct. 1360, 35 L.Ed.2d 613 (1973); *State v. Caldwell,* 322 N.W.2d 574, 586 (Minn.1982) (the testimony was "damning—and it was false. It was unquestionably material; its significance should not be underestimated."); *Marshall v. State,* 305 N.W.2d 838, 841 (S.D.1981) (new trial not granted because jury had overwhelming evidence at trial to base a verdict of guilt without testimony of witness; "The jury would have concluded that the defendant was guilty had . . . not testified."); *Mesarosh v. United States,* 352 U.S. 1, 13, 77 S.Ct. 1, 7, 1 L.Ed.2d 1, 9 (1956) (key government witness had apparently testified untruthfully in similar proceedings).

On the other hand, several courts have rejected the *Larrison* rule but still require an initial showing of materiality. *See United States v. Stofsky,* 527 F.2d 237, 247 (2d Cir.1975) (key issue in dispute would not have been affected by new evidence), *cert. denied,* 429 U.S. 819, 97 S.Ct. 65, 50 L.Ed.2d 80 (1976); *United States v. Krasny,* 607 F.2d 840, 845 (9th Cir.1979) (when a key witness's testimony is false it may be probable that an acquittal would result on retrial; this may not be so "when a rather inconsequential witness has prevaricated on a minor or collateral issue."), *cert. denied,* 445 U.S. 942, 100 S.Ct. 1337, 63 L.Ed.2d 775 (1980); *United States v. Jackson,* 579 F.2d 553, 557 (10th Cir.) (recanting testimony *did not* affect the evidence) (additionally the court stated: "We observe that this court in *Briola, supra,* did not necessarily adopt the *Larrison* rule."), *cert. denied,* 439 U.S. 981, 99 S.Ct. 569, 58 L.Ed.2d 652 (1978).

Other courts still adhere to the majority "probable" rule without having considered the *Larrison* rule. However, materiality is still a key factor for consideration. *See, e.g., Hudson v. United States,* 387 F.2d 331 (5th Cir.1967), *cert. denied,* 393 U.S. 876, 89 S.Ct. 172, 21 L.Ed.2d 147 (1968); *Anderson v. United States,* 369 F.2d 11 (8th Cir.1966), *cert. denied,* 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136 (1967).

The Court of Special Appeals also recognized that one of the principles which governs the grant of a new trial in criminal cases is that the evidence must be material to the issues involved. *Angell v. Just,* 22 Md.App. 43, 321 A.2d 830 (1974); *Jones v. State,* 16 Md.App. 472, 477, 298 A.2d 483, 486, *cert. denied,* 268 Md. 750 (1973); *see also* 24 C.J.S. *Criminal Law,* § 1453 (1961); 58 Am.Jur.2d *New Trial,* § 175 (1971).

Thus, no matter which rule is followed in a particular jurisdiction, they all require a finding of materiality to the result of the case. If the requirement of materiality is not demonstrated, there is no necessity to consider whether knowledge of the falsity by the factfinder "might" or "probably" would have resulted in a different verdict.

■ Accordingly, when the trial court found that the evidence of guilt was so overwhelming that the verdict would have been the same without Michaelson's testimony, the fact of the alleged false testimony relating to Michaelson's academic credentials was not material to the outcome of the case. From our review of the record we cannot say the trial judge was in error, and thus there was no abuse of discretion.

### (2)
### Due Process

The appellant next contends that her due process right to a fundamentally fair trial was violated through the use of Michaelson's perjured testimony, and thus she is entitled to a new trial. The appellant argues "that 'the fundamental principles of liberty and justice which lie at the base of all our civil and political institutions,' *Hebert v. Louisiana,* 272 U.S. 312, 316 [47 S.Ct. 103, 104, 71 L.Ed. 270, 273] (1926), may not tolerate the sustaining of a conviction based in part upon the false testimony of a professional expert witness ... simply because the State had no knowledge of the perjury, where the prosecution's lack of diligence in not checking the expert's credentials was confessed." The state

argues that there was no denial of due process because the state was unaware of any perjury, neither was it unreasonable for it not to have known. Furthermore, it is argued that even if there should have been a violation of due process, a new trial is not automatically warranted in that the perjury here did not relate to a material aspect of the trial.

In our view, what appellant urges is a per se rule that whenever a state's paid expert witness testifies falsely, due process is violated, thus necessitating a new trial. In our view the proper rule, which is clearly supportable, requires that an initial inquiry be made to determine if the testimony is material to the outcome of the case; if it is not, the due process clause does not automatically require a new trial.

For a number of years the courts have been concerned with due process problems arising from a variety of factual circumstances. Those closely related to the instant case involved use of false testimony or other evidence and the non-disclosure of exculpatory evidence by the prosecution.

Our review of the cases involving this issue persuades us that they are consistent in holding that the knowing and intentional use of false testimony by the prosecution is a violation of due process providing such testimony is material to the result of the case. In *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217, 1221 (1959), the Supreme Court, in pertinent part, stated:

> *"First,* it is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." (Citations omitted).

The Court in *Napue* implies that it is only when the perjured testimony is also material to the outcome of the trial that the accused is denied due process. *Id.* at 272, 79 S.Ct. at 1179, 3 L.Ed.2d at 1223. In *Miller v. Pate,* 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967), the Supreme Court reversed a conviction where the prosecution knowingly used false testimony with respect to a vital piece of evidence. In

emphasizing how important this evidence was to the outcome of the trial, the Court stated:

"The 'blood stained shorts' clearly played a vital part in the case for the prosecution. They were an important link in the chain of circumstantial evidence against the petitioner, and, in the context of the revolting crime with which he was charged, their gruesomely emotional impact upon the jury was incalculable."

*Id.* at 4–5, 87 S.Ct. at 786–87, 17 L.Ed.2d at 693. Thus, although the Court did not explicitly state that evidence known to be false must be material, it was clearly the basis for the Court's holding.

In *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the Supreme Court stated explicitly what had been implicit in *Napue, supra,* that a new trial was only required if the perjured testimony was material to the outcome of the trial. The *Giglio* Court found a violation of due process and reversed a conviction because the prosecution knowingly did not disclose it had promised one of its key witnesses that he would not be prosecuted if he cooperated with the government and that witness testified he had not been promised immunity. The case depended almost entirely on this witness's testimony, therefore, his credibility was "an important issue in the case." *Id.* at 155, 92 S.Ct. at 766, 31 L.Ed.2d at 109. Finding the element of materiality to be controlling, the Court stated:

"When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule. *Napue, supra,* [360 U.S.] at 269, 79 S.Ct., at 1177. We do not, however, automatically require a new trial whenever ' "a combing of the prosecutors" files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict . . . .' *United States v. Keogh,* 391 F.2d 138, 148 (CA2 1968). A finding of materiality of the evidence is required under *Brady, supra,* [373 U.S. 83] at 87, 83 S.Ct., [1194] at 1196, 10 L.Ed.2d 215. A new trial is required if 'the false testimony could . . . in

any reasonable likelihood have affected the judgment of the jury . . .' *Napue, supra,* [360 U.S.] at 271, 79 S.Ct., at 1178."

405 U.S. at 154, 92 S.Ct. at 766, 31 L.Ed.2d at 108. More recently the Supreme Court, in *Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), made it clear that a new trial is required only when the tainted evidence was material to the case, citing *Napue* and *Giglio.* 455 U.S. at 220 n. 10, 102 S.Ct. at 947, 71 L.Ed.2d at 88.

Several Federal Courts of Appeals have similarly held that new trials are required only when there is a knowing and intentional use of false evidence that is material. *See Ross v. Heyne,* 638 F.2d 979 (7th Cir.1980); *United States v. Brown,* 634 F.2d 819 (5th Cir.1981); *United States v. Illinois,* 619 F.2d 668 (7th Cir.1980); *United States v. Krasny,* 607 F.2d 840 (9th Cir.1979); *United States v. Iverson,* 637 F.2d 799 (D.C.Cir.1980). *See also Imbler v. Craven,* 298 F.Supp. 795 (C.D.Cal.1969), *aff'd,* 424 F.2d 631 (9th Cir.) (per curiam), *cert. denied,* 400 U.S. 865, 91 S.Ct. 100, 27 L.Ed.2d 104 (1970); and *United States ex rel. Broadnax v. DeRobertis,* 565 F.Supp. 327 (N.D.Ill.1983). The Oklahoma Court of Criminal Appeals followed the general rule in *Runnels v. State,* 562 P.2d 932 (Okla.Crim.), *cert. denied,* 434 U.S. 893, 98 S.Ct. 270, 54 L.Ed.2d 179 (1977); but compare *Pearson v. State,* 428 So.2d 1361 (Miss.1983), reaching a different conclusion based on its understanding of *Napue.*

In other factual contexts concerning due process, various courts have held that materiality must be shown before a new trial is warranted. *See United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (no denial of fair trial where prosecutor failed to tender murder victim's criminal record to the defense); *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972) (failure to disclose certain items of evidence deemed not material); *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (suppression of statement by defendant's confederate favorable to defendant); *Ogle v. Estelle,* 641

F.2d 1122 (5th Cir.1981); *Link v. United States,* 352 F.2d 207 (8th Cir.1965), *cert. denied,* 383 U.S. 915, 86 S.Ct. 906, 15 L.Ed.2d 669 (1966). *See also* 58 Am.Jur.2d, *New Trial,* § 172 (1971).

The appellant, understandably, relies heavily on *People v. Cornille,* 95 Ill.2d 497, 69 Ill.Dec. 945, 448 N.E.2d 857 (1983). There the Supreme Court of Illinois reversed a conviction when it came to light that the State had used the same expert witness as was used here, Michaelson, and that he lied about his academic credentials as he did here. We find the two cases to be distinguishable on their facts.

In *Cornille,* it appears that the testimony as to the cause of the fire was evenly balanced, justifying the court's conclusion that Michaelson's testimony, plus his impressive academic background, was likely to have persuaded the factfinder of the defendant's guilt. On the other hand, in the case *sub judice,* the trial judge found evidence of appellant's guilt was overwhelming, even if Michaelson's testimony was not in the case, and he made this observation "beyond a reasonable doubt." Our review of the record confirms this observation.

Moreover, we note the Illinois court did not give credence to such cases as *Napue, Giglio, Smith v. Phillips,* and *Ross v. Heyne,* where the Supreme Court, and the 7th Circuit Court of Appeals, held that it was the knowing and intentional use of false testimony by the prosecutor, which was material to the result of the trial, which violated due process principles warranting a new trial.

In the instant case, as noted above, the evidence was not material to the outcome of the case. Having found *Cornille* distinguishable, and preferring to follow the weight of authority, we affirm.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.

I am authorized to state that Judge DAVIDSON concurs in the result.