887 A.2d 84

**Dan PATRAS**

v.

**Christopher Paul SYPHAX.**

**No. 1532, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Dec. 2, 2005.

68

Thanos Basdekis (Regan, Halperin & Long, PLLC, on brief), Washington, DC, for appellant.

Timothy S. Smith, Lanham, for appellee.

Panel SALMON, ADKINS and JOHN J., BISHOP, JR. (Retired, Specially Assigned), JJ.

SALMON, J.

In answer to special interrogatories, a jury in the Circuit Court for Montgomery County found that appellee Paul Christopher Syphax negligently operated a car that rear-ended a vehicle driven by appellant Dan Patras, and that Syphax's "negligence was the proximate cause of the injuries sustained by [Patras]." But the jury nevertheless awarded Patras no damages.

Patras appeals from the judgment entered on that verdict, raising several issues that we reorder and rephrase as follows:

I. Is the jury's finding that Syphax's negligence caused Patras's injuries inconsistent with its zero dollar damage award?

II. Is the jury's zero damage award inconsistent with uncontroverted proof that Patras sustained injuries in the accident?

III. Did the trial court err in permitting the jury to consider allegedly prejudicial evidence and argument?

IV. Did the trial court err in denying Patras's motion for a new trial on damages?

## I. FACTS AND LEGAL PROCEEDINGS

On March 20, 2000, motorists Patras and Syphax were involved in a rush-hour, rear-end accident near the intersection of Seminary Road on Georgia Avenue in Silver Spring. According to the defendant, Paul Syphax, the impact was a mere "tap" that caused no damage to either vehicle. Mr. Patras, on the other hand, described the impact as "forceful" and said that the impact caused him to be rendered momentarily unconscious and also caused "a bend" in the back of the trunk of the rental vehicle he was driving.

Patras was examined, treated, and released from a hospital emergency room within hours of the accident. He later completed a course of physical therapy for a strained neck and back.

Patras sued Syphax on a single count of negligence. At trial, Syphax admitted that he was following Patras too closely in rainy conditions. The defense focused primarily[1] on Patras's injury claims, offering evidence to show that he exaggerated his pain and injuries from the accident, possibly to obtain compensation for non-existent injuries or pre-existing conditions.

Bernard Stopak, M.D., Patras's treating physician, recounted the course of evaluation and treatment he prescribed. A list of medical expenses totaling $11,832.60, itemized by provider and showing "dates of service," was introduced into evidence after Stopak testified that each of these was a reasonable and necessary medical expense.

In a *de bene esse* video deposition, Clifford Hinkes, M.D., testified as an expert on behalf of Syphax. After examining Patras, Dr. Hinkes agreed that he had some physical injuries from the collision:

> [Defense Counsel:] Do you have an opinion, within [a] . . . degree of medical probability, as to whether Mr. Patras did, in fact, sustain some injuries in this case?
>
> [Dr. Hinkes:] Well, I do have an opinion. He did sustain an injury. There had been a car accident, and a good description. And Mr. Patras has a muscular strain of his neck, and probably his lower back also. He had some aches and pains from the accident. I don't dispute that. I think he had a temporary injury. I think he had . . . pain.

Dr. Hinkes also testified that Patras incurred reasonable medical expenses in the course of treatment for these injuries:

> [Dr. Hinkes:] Some of the treatment was necessary, and some was not. To be exact, one visit to the emergency room at Holy Cross was necessary, due to the accident. . . . Treatment with Dr. Shaw was necessary April, May, June,

---

1. Syphax's counsel also contended, based on evidence introduced at trial, that the accident was not Syphax's fault because Patras stopped suddenly on a wet road when another motorist made a "U" turn in front of him.

and July of 2000.... The two MRI scans were necessary. The one opinion from Dr. Stopak was necessary.

Physical therapy .... should have been limited to visits twice a week for four weeks.

In support of the "exaggeration" defense, counsel presented medical records showing that Patras, age 69 at time of the accident, suffered from degenerative arthritis before the accident. Notwithstanding Dr. Hinkes's expert opinion regarding causation and injury, the defense also challenged whether the conditions for which Patras was evaluated and treated were caused by the collision with Syphax.

Defense counsel cross-examined Patras about (a) hospital records showing that, after he was evaluated following the accident, Patras refused to leave, which caused security personnel to escort him out of the emergency room; and (b) other personal injury claims that Patras made as a result of unrelated incidents. In addition to evidence that Patras had previously been treated for arthritis, the defense offered medical records showing that Patras was seen in a hospital emergency room in 1995 with reports of the same symptoms that he told Drs. Stopak and Hinkes that he experienced for the first time after the subject accident. Defense counsel argued that this evidence shows that Patras "lied" to Drs. Stopak and Hinkes, and that both physicians premised their causation opinions on Patras's false reports that he had no prior injuries or complaints.

The trial judge's jury instructions included the following passages:

You need not believe any witness even though the testimony is uncontradicted. *You may believe all, part, or none of the testimony of any witness.*

An expert is a witness who has special training or experience in a given field. You should give expert testimony the weight and value you believe it should have. *You are not required to accept any expert's opinion.* You should consider an expert's opinion together with all the other evidence.

\*     \*     \*

The party who asserts a claim has the burden of proving it by what we call the preponderance of the evidence. To prove, by a preponderance of the evidence, means to prove that something is more likely so, than not so. In other words, a preponderance of the evidence means such evidence which, when considered and compared with the evidence opposed to it, has more convincing force and produces, in your minds, a belief, that it is more likely true than not true.

In determining whether a party has met the burden of proof you should consider the quality of all of the evidence, regardless of who called the witness, or introduced the exhibit, and regardless of the number of witnesses which one party or the other may have produced. *If you believe that the evidence is evenly balanced on an issue, then your finding on that issue must be against the party who has the burden of proving it.*

\*     \*     \*

For the plaintiff to recover, the defendant's negligence must be a cause of the plaintiff's injury. In the event you find for the plaintiff on the issue of liability, then you must go on to consider the question of damages. It will be your duty to determine what, if any, award will fairly compensate the plaintiff for the losses.

*The burden is on the plaintiff to prove, by the preponderance of the evidence, each item of damage claimed to be caused by the defendant.* In considering the items of damage you must keep in mind that your award must adequately and fairly compensate the plaintiff, but an award should not be based on guess work.

(Emphasis added.)

Counsel for Patras made no objection to any of the above instructions.

The questions on the verdict sheet that was submitted to the jury and the answers by the jury to the questions were:

1. Do you find that Plaintiff Dan Patras has established by a preponderance of the evidence that Defendant, Paul

Syphax, was negligent in operating his motor vehicle and that this negligence was a proximate cause of the automobile accident on March 20, 2000?

Yes √ No _____

\*    \*    \*

2. Was the Defendant's negligence a proximate cause of the injuries sustained by the Plaintiff?

Yes √ No _____

If you answered "Yes" to Question No. 2, then go on to answer Question No. 3. If you answered "No" to Question No. 2, then your job is done and you may not award any damages in this case. You should proceed no further except to sign this form and return it to the Court.

3. What amount, if any, do you award as damages to the Plaintiff:

a) Medical expenses *$0.00*

b) Non-economic damages *$0.00*

Other than asking that the jury be polled, Patras's counsel did not ask the court to take any action at trial after the answers to the questions on the verdict sheet were announced. Within ten days of the date a judgment in favor of Syphax was entered, Patras moved for a new trial as to damages, only. He argued: (1) the jury's answer to Question 3 on the verdict sheet constituted "a miscarriage of justice ... [and amounted to] jury nullification and an illegal verdict" in light of the fact that "the jury found that the [d]efendant's negligence was the proximate cause of the accident and further found that the [d]efendant's negligence was the proximate cause of injury to [p]laintiff"; (2) "the jury's verdict of zero damages was legally inadequate given the jury's findings that the [d]efendant was negligent in causing the accident and that the [d]efendant's negligence was the proximate cause of injury to [p]laintiff"; and (3) "the verdict of zero damages was against the weight of the evidence." Following the trial court's denial of his new trial motion, Patras noted this timely appeal.

## II. DISCUSSION

### A. Inconsistent Verdicts

Whereas inconsistent verdicts in criminal trials "may be permitted to stand," the Court of Appeals has held that *"irreconcilably inconsistent jury verdicts"* in a civil case "cannot stand." *Southern Mgmt. Corp. v. Taha,* 378 Md. 461, 487–88, 836 A.2d 627 (2003). " 'Where the answer to one of the questions in a special verdict form would require a verdict in favor of the plaintiff and an answer to another would require a verdict in favor of the defendant, the verdict is irreconcilably defective.' " *Id.* at 488, 836 A.2d 627 (citation omitted). The question we must resolve is this: Based on the jury instructions, did the answer to Question 2 on the special verdict form require that some damages be awarded when Question No. 3 was answered?

■ Patras argues that the jury's zero-damage awards for both medical expenses and non-economic damages (answer to special Interrogatory No. 3) are irreconcilably inconsistent with its findings that Syphax's negligence caused both the accident (answer to special Interrogatory No. 1) and Patras's injuries (answer to special Interrogatory No. 2). Patras contends that, because the jury found by special interrogatory that Syphax's negligence caused Patras's injuries, some award of damages was required.

Syphax responds that "case law supports the jury's ability to award zero damages to the [p]laintiff even if negligence is found." He cites, *inter alia, Mason v. Lynch,* 151 Md.App. 17, 822 A.2d 1281 (2003), *aff'd on other grounds,* 388 Md. 37, 878 A.2d 588 (2005), in which we recently affirmed a zero-damage award, even though the jury found that the defendant was negligent.

We disagree with Patras's assertion that the jury's zero-damage award cannot be reconciled with its causation findings. Based on the unobjected-to instruction that the burden was on Patras to prove by a preponderance of evidence "each item of damage claimed to be caused by a defendant," the jury could

have found that as a result of the accident Patras had suffered some injury, but he nevertheless had failed to meet his burden of proof in showing the amount that would compensate him for his injury as to any particular item of damage.

Taking the evidence in the light most favorable to Syphax, the jury could have concluded that (1) the negligence of Syphax caused an almost negligible impact with Patras's vehicle; (2) that Patras gave false information to Drs. Stopak and Hinkes in an effort to increase the value of his claim against Syphax; (3) that Patras's testimony concerning his post-accident physical complaints was intentionally false; and (4) that the expert's opinions as to the necessity and reasonableness of medical treatment was based on a false history provided by Patras and was therefore unreliable. If the jury reached those conclusions, it could have, in conformity with the court's instructions, believed that Patras had no legitimate medical expenses resulting from the accident but nevertheless experienced some minor pain as a result of the "slight tap" of his vehicle. A reasonable juror could conclude that no monetary award was justified because Patras was so untrustworthy as a medical historian that he had failed to meet his burden of proving the amount of money that would compensate him for his pain. Accordingly, having been told by the judge that a damage award should not be based on guesswork or speculation, a reasonable juror could also conclude that zero damages were warranted.

▪ Appellant stresses that the standard definition of negligence "requires 'actual injury or loss.' " *Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A.,* 152 Md.App. 698, 719, 834 A.2d 170 (2003), *cert. denied,* 379 Md. 225, 841 A.2d 340 (2004) (citing *Edmonds v. Cytology Serv. of Maryland, Inc.,* 111 Md.App. 233, 681 A.2d 546 (1996)), *aff'd sub. nom., Rivera v. Edmonds,* 347 Md. 208, 218, 699 A.2d 1194 (1997), and therefore "nominal damages or technical liability do not exist" (citing *Peroti v. Williams,* 258 Md. 663, 671, 267 A.2d 114 (1970)). We have no quarrel with the precepts discussed in the cases cited. Those cases contain learned academic discus-

sions concerning tort principles. Here, however, the issue cannot be resolved by applying academic definition to words used in the verdict sheet. Jurors are presumed to have understood and to have followed the court's instructions. *State v. Gray*, 344 Md. 417, 425 n. 6, 687 A.2d 660 (1997); *Matthews v. State*, 106 Md.App. 725, 743, 666 A.2d 912 (1995). Nothing in the record rebuts that presumption in the case at hand.

The jury was told:

Negligence is something that a person using reasonable care would not do. Or not doing something that a person using reasonable care would do. Reasonable care means that caution, attention, or skill a reasonable person would use under similar circumstances.

Neither that instruction nor any other required the jury to award monetary damages in the event that it found that plaintiff, although injured by the defendant's action, had failed to meet his burden of proving (by a preponderance of evidence) the amount of damages that would fairly compensate him for his injuries.

### B. *The Zero Damage Award Is Not Inconsistent With Uncontroverted Evidence*

Patras argues that the zero-damage award is also inconsistent with uncontroverted evidentiary facts establishing causation. The Court of Appeals has explained that,

"for evidentiary facts and inferences to be uncontroverted or undisputed, there must be either actual or constructive acquiescence in their truth on the part of all affected parties." While a jury must accept uncontroverted evidence as a matter of law, the jury may disbelieve uncontradicted evidence.

*Allstate Ins. Co. v. Miller*, 315 Md. 182, 186, 553 A.2d 1268 (1989) (citation omitted).

Patras relies on the testimony of Drs. Stopak and Hinkes that he suffered pain and some reasonable medical expenses as a result of the accident. According to Patras, Syphax

"actually acquiesced to the fact of Mr. Patras's injuries" by presenting Dr. Hinkes's testimony, which made "the fact of such injuries" "uncontroverted." He asserts that he is entitled to compensatory damages as a matter of law; therefore, the appropriate remedy is a new trial on damages alone.

Syphax disputes that he acquiesced as alleged. We agree with Syphax that the jury was obligated to consider Dr. Hinkes's opinion that Patras was injured in the accident, but it was not obligated to believe that opinion. As the record shows, the jury had enough reason to question whether Patras sustained the injuries testified to by Dr. Hinkes; thus, the issue of whether any injury was sustained was controverted.

■ Syphax offered Dr. Hinkes's testimony primarily to establish that Patras exaggerated his physical ailments in an effort to enhance his damage claim. But, after Dr. Hinkes offered his expert opinion that Patras was injured in the accident, defense counsel introduced medical records to undermine that opinion. Specifically, counsel offered evidence to show that both doctors' causation opinions were premised on the factually incorrect assumption that Patras, prior to the accident, had no injuries or symptoms similar to those he said he experienced immediately after the accident.[2] In doing so, Syphax controverted the issue of whether Patras's ailments were caused by the accident.

There being no "uncontroverted evidentiary fact," the zero-damage award cannot be inconsistent with an uncontroverted fact, as Patras contends. This conclusion follows our decision in *Mason v. Lynch*, 151 Md.App. at 17, 822 A.2d 1281. In *Mason*, we also declined to hold that a zero-damage award was inconsistent with expert testimony from a defense physician that the plaintiff "sustained some injury and that some treatment was reasonable," because "the jurors were free to accept or reject all or any part of any witness's testimony or

---

2. Defense counsel was entitled to impeach Hinkes's causation testimony because a party does not vouch for the credibility of its witness. *See* Md. Rule 5–607; *Walker v. State*, 373 Md. 360, 374–75, 818 A.2d 1078 (2003).

the reports of experts." *Id.* at 30, 822 A.2d 1281. In *Mason,* extrinsic evidence controverted the defense expert's causation testimony, including evidence that the plaintiff "did not claim any injuries at the scene," that she "went to see a lawyer before going to a doctor," and that she "had been involved in an accident in 1995, in which she struck her head on the window of her vehicle." *Id.*

*Edsall v. Huffaker,* 159 Md.App. 337, 859 A.2d 274 (2004), *cert. denied,* 387 Md. 122, 874 A.2d 917 (2005), also supports our holding. In *Edsall,* we affirmed a zero-damage award arising from an auto accident, even though the defendant failed to present evidence to contradict causation testimony by the plaintiff's expert. We held that this defense strategy "did not make the evidence that the accident caused [plaintiff's] injury to his right knee uncontroverted," because the defense was entitled to challenge the causation testimony by the plaintiff's expert on the ground that it was equivocal. *See id.* at 343–44, 859 A.2d 274 (plaintiff's orthopedic expert admitted that knee injury allegedly resulting from car accident might have been caused by plaintiff's athletic activities, or by repetitive use of knee, which was affected by tendinitis).

### III. *ALLEGED EVIDENTIARY ERRORS*

Patras claims that reversible error was committed at several points in the trial, *viz:* (1) during opening statement defense counsel said that "[i]t's going to be a roller coaster ride when" Patras testifies and that Mr. Patras had come to court for a "cup of justice" but, after the jury considered the evidence, "that cup should be empty"; (2) that during cross-examination of Patras, defense counsel tried to "take advantage" of the witness's misunderstanding of a series of questions; (3) that at several points in his cross-examination of Patras, defense counsel tried to make "the elderly witness extremely uncomfortable." None of these "errors" are preserved for appellate review because Patras's counsel never objected to the words or conduct of defense counsel, nor was a request for mistrial made. *See* Md. Rule 8–131(a) (except for issues involving subject matter jurisdiction, an appellate court

ordinarily will not decide any issue neither raised nor decided below).

■ Patras also claims that the trial judge erred by allowing defense counsel to ask him the following question: "Mr. Patras, so if the records reflect that security was called to escort you [out of the hospital's emergency room] because they were done with you, those records are incorrect?" Appellant now asserts that the objection to that question should have been sustained because the question was both "irrelevant and prejudicial." But at trial, Patras's counsel objected to the question on the sole grounds that there "was no foundation" for the question, nor "testimony to this effect." The issue of whether the question was either irrelevant or prejudicial has not been preserved for review. *See Anderson v. Litzenberg,* 115 Md.App. 549, 569, 694 A.2d 150 (1997) (when counsel volunteers a specific ground for objection at trial, only that ground will be reviewed on appeal).

Lastly, Patras claims that the trial judge erred in allowing defense counsel to inquire as to whether he made a claim concerning a bus accident that occurred forty-six days after the subject accident. Before asking the question at issue, defense counsel and Patras engaged in the following colloquy:

Q You complained of some dizziness and problems with your head after this accident [with Syphax], isn't that correct?

A Yes.

Q All right. But isn't it [a] fact that on May 5th, 2000, you went to the emergency room at Suburban Hospital complaining that you hit the left side of your head on a pole in a bus when the bus slammed on its brakes, and that you lost consciousness and you complained of headache and blurred vision and dizziness?

A I did hit my [ear], again, with the reckless driving of the bus that I was riding on.

■ Defense counsel then asked Patras, "Did you file a claim against the bus company?" Patras's counsel's objection

to that question was overruled. That question was not answered, however, because counsel for defendant rephrased the question and asked: "Did you file a claim against the bus company for reckless driving?" No objection was made to that question, and Patras answered: "I did because (inaudible) compensation from the medical bills, and they refuse to do it." Appellant contends that allowing defense counsel to ask the second question was improper because the question constituted "a form of inquiry into a prior bad act."[3] We reject that contention because, under anyone's definition, filing an accident claim against a third party is not a "bad act."

In any event, the trial judge did not abuse his discretion in overruling appellant's objection to the first question. Because the bus accident was close in time to the one at issue and because the bus accident evidently resulted in the same type of injuries as those for which Patras sought recompense in the subject suit, the defense had a right to know whether the subsequent injuries were serious enough to cause a claim to be filed.[4]

## IV.

■ Patras's counsel filed a motion for new trial within ten days of the entry of the judgment in favor of Syphax. Patras claims that the trial judge erred in denying that motion.

---

**3.** Technically, this contention, like all the others concerning issues of evidence, has not been preserved. *See Beghtol v. Michael,* 80 Md.App. 387, 394, 564 A.2d 82 (1989) (In the absence of a continuing objection, specific objections to each question are necessary to preserve an issue for appeal); *Baltimore & Ohio Railroad v. Plews,* 262 Md. 442, 470–71, 278 A.2d 287 (1971).

**4.** Patras claims that the "trial judge erred in not admonishing the jury to disregard the prejudicial inquiry" about the bus-accident case. The short answer to that claim is that no such instruction was requested. *See* Md. Rule 2–520(e), which provides:

> **Objections.** No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury.

Appellant's brief sets forth four grounds as to why the new trial motion should have been granted. None of those grounds were mentioned in Patras's motion for new trial.[5] Thus, the grounds upon which Patras now claims a new trial should have been granted are not preserved for review. *See* Md. Rule 8–131(a).

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

---

5. Maryland Rule 2–533 reads, in material part:

(a) **Time for filing.** Any party may file a motion for new trial within ten days after entry of judgment. A party whose verdict has been set aside on a motion for judgment notwithstanding the verdict or a party whose judgment has been amended on a motion to amend the judgment may file a motion for new trial within ten days after entry of the judgment notwithstanding the verdict or the amended judgment.

(b) **Grounds.** *All grounds advanced in support of the motion shall be filed in writing within the time prescribed for the filing of the motion, and no other grounds shall thereafter be assigned without leave of court.*

(Emphasis added.)